1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

WILMAN GONZALEZ ROSARIO, et al.,

                    Plaintiffs,

         v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al.,

                    Defendants.

CASE NO. C15-0813JLR

ORDER

11
12
13
14
15
16

## I.   INTRODUCTION

Before the court are two motions:  (1) a partial motion to dismiss (3d MTD (Dkt. # 88)) by Defendants United States Citizenship and Immigration Services ("USCIS"); United States Department of Homeland Security ("DHS"), which oversees USCIS; James McCament, Acting Director of USCIS, in his official capacity; and John Kelly, Secretary of DHS, in his official capacity (collectively, "Defendants"); and (2) a motion for class

1    certification (3d MCC (Dkt. # 82)) by Plaintiffs Wilman Gonzalez-Rosario, L.S., K.T.,

2    A.A., Karla Diaz Marin, Antonio Machic Yac, Faridy Salmon, Jaimin Shah, and W.H.

3    (collectively, "Plaintiffs").[1]   The court has considered the motions, the briefing filed in

4    support thereof and opposition thereto, the relevant portions of the record, and the

5    applicable law.   In addition, the court held oral argument on July 13, 2017.   Considering

6    itself fully advised, the court GRANTS Defendants' partial motion to dismiss and

7    GRANTS in part and DENIES in part Plaintiffs' motion for class certification.

8                              **II.    BACKGROUND**

9            Through this injunctive class action, Plaintiffs seek to compel USCIS to abide by

10   regulatory deadlines for adjudicating applications for employment authorization

11   documents ("EADs") filed by noncitizens.   (*See generally* Am. Compl. (Dkt. # 58).)

12   **A.    Regulatory Structure**

13           For an alien to be eligible to work in the United States, the alien must file Form

14   I-765 with DHS and obtain an EAD.   (Am. Compl. ¶¶ 3-4; Instructions for Application

15   for Employment Authorization ("I-765 Instructions"), U.S. Customs and Immigration

16   Services (Nov. 4, 2015), *available at* https://www.uscis.gov/sites/default/files/files/form/

17   i-765instr.pdf (last accessed July 18, 2017).[2]   USCIS is responsible for adjudicating Form

18   //

---

19   [1] The court directs the Clerk to substitute James McCament for former Director of USCIS
     Leon Rodriguez and John Kelly for former Secretary of DHS Jeh Johnson.  *See* Fed. R. Civ. P.
20   25(d).  Furthermore, pursuant to the court's October 5, 2016, order, the court DIRECTS the
     Clerk to terminate as plaintiffs Northwest Immigrant Rights Project, The Advocates for Human
21   Rights, Marvella Arcos, and Carmen Osorio.  (*See* 10/5/16 Order (Dkt. # 80) at 17-18, 22-36.)

22   [2] Plaintiffs incorporate the I-765 Instructions into their amended complaint by reference.
     (*See* Am. Compl. ¶ 8.)

1    I-765.  (Am. Compl. ¶ 4.)  When Plaintiffs filed this lawsuit, federal regulations provided

2    a 90-day timeline—with certain exceptions—for USCIS to adjudicate EAD applications.[3]

3    *See* 8 C.F.R. §§ 274a.13(d) (effective until Jan. 16, 2017).  The regulations excepted

4    individuals seeking an initial EAD based on an underlying asylum applicationfrom the

5    90-day timeline.  *See id.* (excluding from the 90-day deadline "initial application[s] for

6    employment authorization under 8 CFR 274a.12(c)(8)"); *cf. id.* §§ 274a.12(c)(8)

7    (covering aliens who have "filed a complete application for asylum or withholding of

8    deportation or removal pursuant to 8 CFR part 208"), 208.7(a)(1) (providing a timeline

9    for adjudicating asylum-based EAD applications).

10          Throughout this case, the regulations have conferred discretion on USCIS to

11   approve or deny EAD applications unless they are filed by an applicant for asylum.  *See* 8

12   C.F.R. § 274a.13(a)(1); 8 C.F.R. § 274a.13(a)(1) (effective until Jan. 16, 2017); *see also*

13   *Guevara v. Holder*, 649 F.3d 1086, 1091-92 (9th Cir. 2011) ("[T]he authorization for

14   such employment is not mandated."); *Kaddoura v. Gonzales*, No. C06-1402RSL, 2007

15   WL 1521218, at *5 (W.D. Wash. May 21, 2007) ("While plaintiff is correct that as an

16   'alien who has filed an application for adjustment of status' he is within the class of

17   aliens 'eligible' for an EAD, under the plain language 8 C.F.R. §§ 274a.12 and 274a.13,

18   his eligibility for an EAD resides within the discretion of USCIS and there is no appeal

19   //

---

20
21   [3] The applicable regulations have changed since Plaintiffs filed this lawsuit, and those changes are important to the motions before the court.  *Compare* 8 C.F.R. § 274a.13(d) (effective until January 16, 2017), *with* 8 C.F.R. § 274a.13(d) (eliminating the prior version's 90-day adjudication deadline and automatic issuance of an interim EAD).  Except where parenthetically noted, the court's citations to the Code of Federal Regulations are to the current version.

22

ORDER - 3

1    from the denial of the application.").  However, the prior version of the regulation used

2    mandatory language when discussing the timeline for adjudicating such applications:

3        USCIS will adjudicate the application within 90 days from the date of receipt
         of the application. . . . Failure to complete the adjudication within 90 days
4        will result in the grant of an employment authorization document for a period
         not to exceed 240 days.  Such authorization will be subject to any conditions
5        noted on the employment authorization document.  However, if USCIS
         adjudicates the application prior to the expiration date of the interim
6        employment authorization and denies the individual's employment
         authorization application, the interim employment authorization granted
7        under this section will automatically terminate as of the date of the
         adjudication and denial.

8    8 C.F.R. § 274a.13(d) (effective until Jan. 16, 2017).  In sum, if USCIS had not

9    adjudicated an EAD application within 90 days of receipt, the regulation required USCIS

10   to issue one or more interim EADs for 240 days or until USCIS adjudicated the EAD

11   application, whichever came first.

12        Effective January 17, 2017, DHS amended the regulations that imposed the 90-day

13   deadline.  The regulations no longer set a 90-day timeline for adjudicating EAD

14   applications.  *See* 8 C.F.R. § 274a.13(d); Retention of EB-1, EB-2, and EB-3 Immigrant

15   Workers & Program Improvements Affecting High-Skilled Nonimmigrant Workers

16   ("Retention of Immigrant Workers"), 81 Fed. Reg. 82,398, 82,455 (Nov. 18, 2016)

17   (codified at 8 C.F.R. §§ 204-05, 214, 245, 274a).  Instead, they provide for automatic

18   extension of certain types of EADs upon the filing of an EAD renewal application.  *See* 8

19   C.F.R. § 274a.13(d); Retention of Immigrant Workers, 81 Fed. Reg. at 82,455-57.

20        A different regulation governs asylum seekers applying for an initial EAD, who

21   the court will refer to as initial asylum EAD applicants, and that regulation has not

22

1    changed during the course of this litigation.[4]  *See* 8 C.F.R. §§ 208.7(a)(1), 274a.12(c)(8),

2    274a.13(d); *see also Carballo v. Meissner*, No. C00-2145, 2000 WL 1741948, at *2

3    (N.D. Cal. Nov. 17, 2000) (describing the process for an asylum applicant seeking an

4    EAD).  Section 274a.13(a)(2) mandates that USCIS adjudicate initial asylum EAD

5    applications "in accordance with [Section] 208.7."  8 C.F.R. § 274a.13(a)(2).  After filing

6    an application for asylum, an individual typically must wait 150 days before filing an

7    initial EAD application, but there are exceptions to this rule.  *Id.* § 208.7(a)(1).  For

8    instance, if asylum is granted within 150 days, the asylee may apply for an EAD

9    immediately thereafter.  *Id.*  Additionally, if asylum is denied at any point, the applicant

10   becomes ineligible for an EAD.  *Id.*

11        Assuming an individual's "asylum clock" runs for at least 150 days without delay

12   caused by the applicant, she may apply for an EAD while her asylum application pends.

13   *Id.* §§ 208.7(a)(1)-(2), (4).  USCIS "shall have 30 days from the date of filing of the

14   request [sic] employment authorization to grant or deny that application," except that in

15   no event may USCIS grant the EAD prior to 180 days after the noncitizen files her

16   asylum application.  *Id.* § 208.7(a)(1); *see also* 8 U.S.C. § 1158(d)(2).  Section 208.7 is

17   silent about whether there is any consequence if USCIS fails to meet this 30-day

18   adjudication deadline.  *See* 8 C.F.R. § 208.7(a)(1); *cf. id.* § 274a.13(d) (effective until

19   //

20   //

21   _____

        [4] DHS did not amend 8 C.F.R. § 208.7, which governs initial asylum EAD applicants, as
22   part of the January 2017 amendments.  *See generally* Retention of Immigrant Workers, 81 Fed.
      Reg. 82,398.

1    Jan. 16, 2017) (providing for interim EADs for other EAD applicants if USCIS has not

2    decided their EAD applications within 90 days).

3    **B.    Factual Allegations**

4            Based on this regulatory structure, Plaintiffs seek to certify a nationwide class

5    consisting of two subclasses.  (*See generally* 3d MCC.)  Each Plaintiff seeks to serve as a

6    class representative of one of the two putative subclasses.  (*See* Am. Compl. ¶¶ 89-90; 3d

7    MCC at 5.)  Plaintiffs propose the following class definition:

8            Noncitizens who have filed or will file applications for employment
             authorization that were not or will not be adjudicated within the regulatory
9            timeframe, namely:

10                   (1) 90 days, for those filing applications for employment authorization
                         under 8 C.F.R. § 274a.13 ("90-Day Subclass"); or

11

12                   (2) 30 days, for those filing initial applications for employment
                         authorization under 8 C.F.R. § 208.7 ("30-Day Subclass"); and

13           who have not or will not be granted interim employment authorization.

14           [The 90-Day Subclass] consists of only those applicants for whom 90 days
             has accrued or will accrue under the applicable regulations, 8 C.F.R.
15           §§ 103.2(b)(10)(i), 274.13a.13(d).

16           [The 30-Day Subclass] consists of only those applicants for whom 30 days
             has accrued or will accrue under the applicable regulations, 8 C.F.R.
17           §§ 103.2(b)(10)(i), 208.7(a)(2), (a)(4).

18   (3d MCC at 2.)

19           Mr. Gonzalez Rosario, L.S., K.T., Ms. Diaz Marin, Ms. Salmon, and Mr. Shah

20   (collectively, "90-Day Plaintiffs") seek to represent the 90-Day Subclass.  (3d MCC at 5;

21   *see also* Am. Compl. ¶ 89.)  90-Day Plaintiffs argued on behalf of the 90-Day Subclass

22   that the previous version of 8 C.F.R. § 274a.13(d) obligated USCIS to either adjudicate

1   their EAD application within 90 days or issue an interim EAD.  (Am. Compl. ¶¶ 5-6; *see*

2   *also* 10/5/16 Order (Dkt. # 80) at 7-9 (articulating in greater detail 90-Day Plaintiffs'

3   factual allegations).)  90-Day Plaintiffs concede that the January 2017 amendments

4   eliminate USCIS's duty going forward to adjudicate EAD applications within 90 days or

5   issue interim EADs, but 90-Day Plaintiffs maintain that injunctive relief is warranted.

6   (3d MTD Resp. (Dkt. # 91) at 1-2.)  Specifically, 90-Day Plaintiffs ask the court to enjoin

7   Defendants from ascribing negative immigration consequences based on the 90-Day

8   Subclass's inability to legally work or decision to work unlawfully during USCIS's

9   failure to timely adjudicate the 90-Day Subclass's EAD applications or issue interim

10  EADs.  (*Id.*)

11          A.A., Mr. Machic Yac, and W.H. (collectively, "30-Day Plaintiffs") seek to

12  represent the 30-Day Subclass.  (Am. Compl. ¶ 90.)  All three individuals are initial

13  asylum EAD applicants and contend that Defendants failed to comply with their

14  regulatory obligation to adjudicate 30-Day Plaintiffs' EAD applications within 30 days.

15  (*Id.* ¶¶ 21, 23, 28, 57, 62, 81.)

16  **C.    Procedural History**

17          Ms. Arcos, Ms. Osorio, W.H., Northwest Immigrant Rights Project, and The

18  Advocates for Human Rights filed this lawsuit as a putative class action on May 22,

19  2015.  (Compl. (Dkt. # 1).)  On February 10, 2016, the court concluded it lacked

20  subject-matter jurisdiction over claims by Ms. Arcos, Ms. Osorio, Northwest Immigrant

21  Rights Project, and The Advocates for Human Rights.  (*See* 2/10/16 Order (Dkt. # 55).)

22  //

1    However, the court granted leave to amend the complaint to remedy the deficiencies

2    identified in the order.  (*Id.* at 37-39.)

3            On March 10, 2016, the plaintiffs filed an amended complaint.  (Am. Compl.)

4    The amended complaint includes the five original plaintiffs and adds eight additional

5    plaintiffs.  (*Id.*)  The day after filing their amended complaint, Plaintiffs moved for class

6    certification.  (2d MCC (Dkt. # 59).)  Several weeks later, Defendants moved to dismiss

7    the amended complaint.  (2d MTD (Dkt. # 69).)  The court granted in part the motion to

8    dismiss and dismissed the claims of Ms. Arcos, Ms. Osorio, Northwest Immigrant Rights

9    Project, and The Advocates for Human Rights.  (10/5/16 Order at 17-18, 22-36); *see also*

10   *supra* n.1.  The court denied class certification with leave to renew the motion in a

11   manner that cured commonality deficiencies that the court identified.  (*Id.* at 41-55.)  The

12   currently pending motions followed the court's order.

## III.    ANALYSIS

**A.    Partial Motion to Dismiss**

15           Defendants contend the amended EAD regulations that went into effect on January

16   17, 2017, moot 90-Day Plaintiffs' claims and the 90-Day Subclass's claims.  (*See*

17   *generally* 3d MTD.)  Accordingly, Defendants argue that the court should dismiss those

18   claims for lack of subject-matter jurisdiction.

19           1.  Legal Standard

20           "If the court determines at any time that it lacks subject-matter jurisdiction, the

21   court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Because subject-matter

22   jurisdiction is not waivable, parties may present a motion to dismiss for lack of

1  subject-matter jurisdiction at any point in the litigation.  *Cf.* Fed. R. Civ. P. 12(h)(1).  A

2  motion to dismiss for lack of subject-matter jurisdiction is either facial or factual.  *See*

3  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack,

4  the challenger asserts that the allegations contained in a complaint are insufficient on

5  their face to invoke federal jurisdiction."  *Id.*  The court accepts the factual allegations in

6  the complaint as true, and the nonmoving party is entitled to have those facts construed in

7  the light most favorable to it.  *Fed'n of African Am. Contractors v. City of Oakland*, 96

8  F.3d 1204, 1207 (9th Cir. 1996).  However, if the moving party "convert[s] the motion to

9  dismiss into a factual motion by presenting affidavits or other evidence properly brought

10  before the court, the party opposing the motion must furnish affidavits or other evidence

11  necessary to satisfy its burden of establishing subject[-]matter jurisdiction."  *Savage v.*

12  *Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th

13  Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  In either

14  instance, the party asserting its claims in federal court bears the burden of establishing

15  subject-matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

16  375, 377 (1994).

17         Here, Defendants challenge the court's subject-matter jurisdiction by arguing that

18  90-Day Plaintiffs' claims are moot.  (*See generally* 3d MTD.)  Mootness is "the doctrine

19  of standing set in a time frame:  The requisite personal interest that must exist at the

20  commencement of litigation (standing) must continue throughout its existence

21  (mootness)."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  "To establish

22  Article III standing, an injury must be 'concrete, particularized, and actual or imminent;

1    fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper*

2    *v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v.*

3    *Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  Even if the plaintiff had standing

4    when the complaint was filed, a case becomes moot if at any point it "does not satisfy the

5    case-or-controversy requirement of Article III, § 2 of the Constitution."  *Caswell v.*

6    *Calderon*, 363 F.3d 832, 836 (9th Cir. 2004).

7        2.  90-Day Plaintiffs' Claims

8        "The type of claim asserted in the complaint dictates the nature of the relief that

9    may be afforded to the plaintiff."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 n.6

10   (9th Cir. 2006).  90-Day Plaintiffs assert two claims on behalf of themselves and the

11   90-Day Subclass—one under the Mandamus Act, 28 U.S.C. § 1361, and one under the

12   Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*  (Am. Compl. ¶¶ 104-10,

13   125-28.)  The Mandamus Act vests original jurisdiction in the district courts over "any

14   action in the nature of mandamus to compel an officer or employee of the United States

15   or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  APA

16   Section 706(1) operates similarly in this realm, permitting courts to "compel agency

17   action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).  The APA also

18   provides for judicial review of "final agency action for which there is no other adequate

19   remedy in a court."  5 U.S.C. § 704.  The court may "hold unlawful and set aside" such

20   agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in

21   accordance with law."  *Id.* § 706(2)(A).

22   //

1

a.  *Claims under APA Section 706(1) and the Mandamus Act*

2

APA Section 706(1) and the Mandamus Act do not permit the relief 90-Day

3

Plaintiffs now seek.  APA Section 706(1) empowers the court to "compel agency action

4

unlawfully withheld or unreasonably delayed." *Id.* § 706(1).  However, such a claim

5

"can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency

6

action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64

7

(2004).  "Absent such an assertion, a Section 706(1) claim may be dismissed for lack of

8

jurisdiction." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019-20 (9th Cir.

9

2007); *see also Gros Ventre Tribe v. United States*, 469 F.3d 801, 814 (9th Cir. 2006)

10

(upholding the district court's dismissal of an APA claim for lack of jurisdiction because

11

the plaintiffs failed to demonstrate the government's obligation to "take discrete

12

nondiscretionary actions").  Furthermore, "when an agency is compelled by law to act

13

within a certain time period, but the manner of its action is left to the agency's discretion,

14

a court can compel the agency to act, but has no power to specify what the action must

15

be." *Norton*, 542 U.S. at 65 (clarifying that "law" can include "agency regulations that

16

have the force of law").

17

The Mandamus Act operates similarly in this context, empowering district courts

18

"to compel an officer or employee of the United States or any agency thereof to perform

19

a duty owed to the plaintiff." 28 U.S.C. § 1361; *see also Garcia v. Johnson*, No.

20

14-cv-1775-YGR, 2014 WL 6657591, at *5 (N.D. Cal. Nov. 21, 2014) ("The

21

jurisdictional dimensions of the APA and the Mandamus Act are considered to be

22

coextensive for purposes of compelling agency action that has been unreasonably

1   delayed.").  "Although the exact interplay between these two statutory schemes has not

2   been thoroughly examined by the courts, the Supreme Court has construed a claim

3   seeking mandamus under the [Mandamus Act], 'in essence,' as one for relief under

4   [Section] 706 of the APA." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.

5   1997) (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4

6   (1986)); *see also Garcia*, 2014 WL 6657591, at *5 ("Where, as here, the relief sought is

7   identical under the APA and the mandamus statute, proceeding under one as opposed to

8   the other is not significant.").

9         90-Day Plaintiffs indicate that in light of the amendments to 8 C.F.R.

10  § 274a.13(d), they "no longer seek class-wide relief" in the form of compelling

11  Defendants to either adjudicate EADs within 90 days or grant an interim EAD.  (3d MTD

12  Resp. at 1.)  Rather, 90-Day Plaintiffs now contend that they and the 90-Day Subclass

13  suffered harm by either (1) being unlawfully deprived of the opportunity to work, or (2)

14  engaging in unauthorized employment, which may count against applicants in any

15  subsequent application for immigration benefits.  (*Id.* at 1-7.)  90-Day Plaintiffs therefore

16  now seek relief in the form of "an order enjoining Defendants from denying 90-Day

17  Subclass members' future applications for immigration benefits based on unauthorized

18  employment during any periods when adjudication of their EAD applications was

19  delayed beyond 90 days."  (*Id.* at 12-13.)  In other words, 90-Day Plaintiffs no longer

20  seek to compel Defendants to take a discrete agency action that they are required to take.[5]

21

22        [5] At oral argument, 90-Day Plaintiffs narrowed their amended request for relief.  90-Day
      Plaintiffs suggested that the court could merely compel Defendants to adjudicate EAD

1   *See Norton*, 542 U.S. at 64; *cf. Viet. Veterans of Am. v. Cent. Intelligence Agency*, 811

2   F.3d 1068, 1075-82 (9th Cir. 2015) (affirming remedial injunctive relief under APA

3   Section 706(1) where the applicable regulation "unequivocally command[ed]" the

4   defendants to provide that relief in the first instance, but the defendants failed to do so).

5   Instead, they now seek injunctive relief to remedy potential collateral harm from

6   Defendants' alleged violations of the previous iteration of 8 C.F.R. § 274a.13(d).

7   Accordingly, the court concludes that 90-Day Plaintiffs' claims under the Mandamus Act

8   and APA Section 706(1) are moot and dismisses those claims.

9          *b.  Claims under APA Sections 704 and 706(2)*

10         90-Day Plaintiffs pivot and argue that their complaint supports a claim under other

11   sections of the APA.  Specifically, APA Section 704 authorizes courts to review "final

12   agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704,

13   and APA Section 706(2) empowers courts to "hold unlawful and set aside agency action,

14   //

---

15   applications or issue interim EADs—rather than granting further collateral relief—for the
16   90-Day Subclass members who (1) are subject to the prior version of 8 C.F.R. § 274a.13(d); (2)
     have not yet received a final adjudication of their EAD application from USCIS; and (3) have not
17   received an interim EAD.  (*But see* MTD Resp. at 1:18-2:7.)  Although this narrowed,
     backward-looking relief arguably constitutes discrete agency action that Defendants were
18   required to take, it applies to an ever-shrinking putative class about which 90-Day Plaintiffs
     make no showing of numerosity.  (*See generally* 3d MCC Reply (Dkt. # 87) (proposing a new
19   class definition that incorporates the January 16, 2017, amendment, but failing to make any
     showing of the numerosity of that class); *cf.* Fed. R. Civ. P. 23(a)(1).  Under that theory, class
20   certification is unwarranted, *see* Fed. R. Civ. P. 23(a)(1), and 90-Day Plaintiffs' claims are moot.
     Therefore, no class action-specific exceptions to mootness save 90-Day Plaintiffs' claims.  (*Cf.*
21   10/5/16 Order at 21-22 (holding that the claims of the individual plaintiffs, including 90-Day
     Plaintiffs, are subject to the inherently transitory exception to mootness "[u]ntil the court issues a
22   final determination on the merits of class certification").)  Accordingly, 90-Day Plaintiffs'
     narrowed request for relief also fails to avoid the court's conclusion that 90-Day Plaintiffs' APA
     Section 706(1) and Mandamus Act claims are moot.

1    findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

2    otherwise not in accordance with law," *id.* § 706(2)(A).

3         "A final agency action 'for which there is no other adequate remedy in a court' is

4    subject to judicial review under" APA Sections 704 and 706(2).  *WildEarth Guardians v.*

5    *Mont. Snowmobile Ass'n*, 790 F.3d 920, 924 (9th Cir. 2015).  Typically, two conditions

6    must be met for agency action to be considered final:  (1) "the action must mark the

7    'consummation' of the agency's decisionmaking process—it must not be of a merely

8    tentative or interlocutory nature"; and (2) "the action must be one by which 'rights or

9    obligations have been determined,' or from which 'legal consequences will flow.'"

10   *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted) (quoting *Chi.*

11   *& S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); *Port of Bos.*

12   *Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

13   The Ninth Circuit has explained that this exhaustion requirement avoids undertaking

14   judicial review "where pending administrative proceedings or further agency action

15   might render the case moot and judicial review completely unnecessary." *Sierra Club v.*

16   *U.S. Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987).  Courts lack

17   subject-matter jurisdiction to review claims under APA Sections 704 and 706(2) unless

18   the responsible agency has taken final action.  *See City of San Diego v. Whitman*, 242

19   F.3d 1097, 1102 (9th Cir. 2001).

20        90-Day Plaintiffs make passing reference to the arbitrary and capricious standard

21   in their amended complaint (Am. Compl. ¶ 125), and they allege in conclusory fashion

22   that they have suffered "final agency action within the meaning of 5 U.S.C. § 704" (*id.*

1    ¶ 126).  However, they have litigated the entirety of this case in pursuit of their claim

2    under APA Section 706(1) and the related Mandamus Act claim.  (*See, e.g.*, 1st MCC

3    (Dkt. # 5) at 1; MSJ (Dkt. # 24) at 23-24; 1st MTD Resp. (Dkt. # 40) at 7-12; 2d MCC

4    (Dkt. # 59) at 1; 2d MTD Resp. (Dkt. # 73) at 4-6; 3d MCC at 6-11.)  Even assuming the

5    amended complaint sufficiently informs Defendants of claims under other sections of the

6    APA and the relief 90-Day Plaintiffs now pursue, Defendants' delay in adjudicating

7    90-Day Plaintiffs' EAD applications does not constitute final agency action.[6]  *See Sze v.*

8    *I.N.S.*, No. C-97-0569 SC, 1997 WL 446236, at *5 n.2 (N.D. Cal. July 24, 1997)

9    (rejecting an analogous argument as "frivolous").  Indeed, the absence of a timely final

10   decision by Defendants caused Plaintiffs to seek to compel adjudication pursuant to APA

11   Section 706(1) and the Mandamus Act.[7]  In contrast, the harm 90-Day Plaintiffs now

12   //

13   _____

     [6] "Agency action" includes the failure to act.  *See* 5 U.S.C. § 551(13); *see also* 5 U.S.C.
     § 701(b)(2) ("'[A]gency action' ha[s] the meaning given to [it] by [S]ection 551 of this title.").

14   However, "the relief the APA provides for a failure to act is that '[t]he reviewing court shall . . .
     compel agency action unlawfully withheld or unreasonably delayed'" pursuant to APA Section

15   706(1).  *Leigh v. Salazar*, No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016, at *4 (D. Nev.
     Sept. 22, 2014) (quoting 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 62) (second and third alterations
     in original); *see also S.F. BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002)

16   (distinguishing between an unreasonable delay claim under the APA, which is based on an
     agency's failure to act, and an APA Section 706(2) claim, which must be based on a final

17   decision); *Audubon Soc'y of Portland v. Jewell*, 104 F. Supp. 3d 1099, 1102 (D. Or. 2015).  In
     other words, the APA channels failure-to-act claims into Section 706(1).  The court has

18   concluded 90-Day Plaintiff's claim under APA Section 706(1) is moot.  *See supra* § III.A.2.a.
     The failure-to-act theory does not alter the court's rationale or conclusion regarding APA Section

19   706(1) or apply to 90-Day Plaintiffs' claim under any other sections of the APA.

20   [7] (*See, e.g.*, Am. Compl. ¶¶ 6 ("USCIS regularly fails to timely adjudicate EAD
     applications and never issues interim employment authorization."), 9 ("The interim employment

21   authorization process was intended to allow people to work lawfully while awaiting final
     adjudication of pending EAD applications."), 12 ("Plaintiffs seek declaratory and injunctive

22   relief to remedy Defendants' unlawful failure to timely adjudicate EAD applications and their
     unlawful withholding of interim employment authorization . . . .").)

1    assert that they fear—adverse immigration consequences from unauthorized employment

2    (3d MTD Resp. at 10, 12-13)—can be addressed, in the event it arises, through an APA

3    challenge to that final agency action, *see Bennett*, 520 U.S. at 177-78.

4          The absence of a final decision by Defendants lays bare 90-Day Plaintiffs' attempt

5    to shoehorn their Mandamus Act and APA Section 706(1) claims into APA Sections 702,

6    704 or 706(2)(A) to avoid mootness problems.  *See Sze*, 1997 WL 446236, at *5 n.2.

7    Because 90-Day Plaintiffs allege facts that demonstrate the lack of a final agency action

8    by Defendants, the court concludes that it lacks subject-matter jurisdiction over their

9    claims under other sections of the APA.  *See Whitman*, 242 F.3d at 1102.  The court

10   accordingly dismisses those claims without prejudice and without leave to amend.

11   Having dismissed 90-Day Plaintiffs' claims, the court DENIES as moot 90-Day

12   Plaintiffs' motion for class certification[8] and turns to 30-Day Plaintiffs' motion for class

13   certification.

14   **B.   30-Day Plaintiffs' Motion for Class Certification**

15         After excising the portion of Plaintiffs' proposed class definition that applies to the

16   90-Day Subclass, 30-Day Plaintiffs' proposed class definition reads:

17   //

18   //

19   //

20

21         [8] This determination also moots the parties' dispute over whether Plaintiffs adequately
     presented their amended proposed class definition by providing it in their reply brief, because the
     amended proposed class definition only altered portions of the original proposed class definition

22   that applied to the 90-Day Subclass.  (*See* 3d MCC Reply at 2 & n.2; 3d MTD at 3 n.2.)

1    Noncitizens who have filed or will file applications for employment
2    authorization that were not or will not be adjudicated within . . . 30 days . . .
     and who have not or will not be granted interim employment authorization.
3    [This class] consists of only those applicants for whom 30 days has accrued
     or will accrue under the applicable regulations, 8 C.F.R. §§ 103.2(b)(10)(i),
4    208.7(a)(2), (a)(4).

(3d MCC at 2; 3d MCC Reply at 2.)

        1.  <u>Legal Standard</u>

        "Class certification is governed by Federal Rule of Civil Procedure 23."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Under Federal Rule of Civil

Procedure Rule 23(a), the party seeking certification must first demonstrate that "(1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "Second,

the proposed class must satisfy at least one of the three requirements listed in Rule

23(b)."  *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512

(9th Cir. 2013).  Here, Plaintiffs seek to certify a class under Rule 23(b)(2), which

requires that "the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); (*see* 3d

MCC at 2.)  "Rule 23(b)(2) applies only when a single injunction or declaratory judgment

would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.

*//*

ORDER - 17

1    Rule 23 "does not set forth a mere pleading standard." *Id.* at 350. Rather,

2    "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the

3    prerequisites of Rule 23(a) have been satisfied." *Id.* at 350-51 (internal quotation

4    omitted). "[I]t may be necessary for the court to probe behind the pleadings before

5    coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

6    147, 160 (1982). This is because "the class determination generally involves

7    considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

8    cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision

9    regarding class certification "involve[s] a significant element of discretion." *Yokoyama*

10   *v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

11       2.  Numerosity

12       "The prerequisite of numerosity is discharged if 'the class is so large that joinder

13   of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

14   Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). In its previous order on class certification,

15   the court concluded that the 30-Day Subclass was sufficiently numerous to satisfy Rule

16   23(a)(1). (10/5/16 Order at 40-41.) Although 30-Day Plaintiffs have since altered the

17   proposed class definition, the size of the putative class has not changed and Defendants

18   do not challenge numerosity. (*See id.*; *see generally* 3d MCC Resp. (Dkt. # 86).)

19   Accordingly, the court's previous analysis applies (*see* 10/5/16 Order at 40-41), and the

20   court concludes that 30-Day Plaintiffs satisfy the numerosity requirement.

21   //

22   //

1          3.   Commonality

2          The requirement of "commonality" is met through the existence of a "common

3    contention" that is of "such a nature that it is capable of classwide resolution." *Dukes*,

4    564 U.S. at 350.  A contention is capable of classwide resolution if "the determination of

5    its truth or falsity will resolve an issue that is central to the validity of each one of the

6    claims in one stroke." *Id.*  Accordingly, "what matters to class certification . . . is not the

7    raising of common questions—even in droves—but, rather the capacity of a classwide

8    proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

9    This requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019.  Accordingly,

10   "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also*

11   *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

12         In its previous order, the court denied class certification largely because 30-Day

13   Plaintiffs failed to demonstrate commonality.  (10/5/16 Order at 41-48.)  The court noted

14   that "answers to one legal question and one factual question will 'drive the resolution of

15   the litigation.'"  (*Id.* at 42 (quoting *Dukes*, 564 U.S. at 350).)  The court determined that

16   the legal question—"whether USCIS is legally obligated to adjudicate EAD applications

17   within a certain timeframe"—was "a 'common contention' that is 'capable of classwide

18   resolution.'"  (*Id.* (quoting *Dukes*, 564 U.S. at 350).)  However, the court concluded that

19   fact-specific tolling inquiries precluded a finding of commonality.  (*See id.* at 42-45.)  In

20   response, 30-Day Plaintiffs altered their proposed class definition and now contend that

21   the proposed class definition eliminates the commonality flaw:  "If tolling occurred, the

22   regulatory adjudication deadline would not have expired, and the applicant would not be

1    a class member, at least until the problem that gave rise to tolling is remedied and the

2    day-count restarts and reaches . . . 30 . . . ."  (3d MCC at 8; *see also* 3d MCC at 2 ("To

3    address the court's concerns about commonality, Plaintiffs propose a simplified class

4    definition that limits the class members to individuals whose claims have accrued.").)

5        The court agrees that by excluding from the class definition any applicants whose

6    deadline has not passed due to tolling, 30-Day Plaintiffs have remedied the commonality

7    issue that the court identified in its prior order.  (*Cf.* 10/5/16 Order at 44-45 & n.20

8    (rejecting the same argument based on the court's reading of the previous proposed class

9    definition).)  Unlike the previous class definition, 30-Day Plaintiffs' current proposal

10   limits the class to "applicants for whom 30 days has accrued or will accrue under the

11   applicable regulations, 8 C.F.R. §§ 103.2(b)(10)(i), 208.7(a)(2), (a)(4)."  (3d MCC at 2.)

12   This excludes from the class any applicants whose 30 days has not accrued and will not

13   accrue under the applicable regulations due to tolling or other regulatory provisions.

14       Defendants argue that the individualized six-factor reasonableness analysis from

15   *Telecommunications Research & Action Center v. F.C.C.* ("*TRAC*"), 750 F.2d 70, 80

16   (D.C. Cir. 1984), precludes the conclusion that common questions will generate common

17   answers apt to drive the resolution of the litigation.[9]  (*See* 3d MCC Resp. at 10-13.)  In

18

19       [9] Under the *TRAC* standard, the court balances the following factors:  (1) the time
     agencies take to make decisions must be governed by a rule of reason; (2) where Congress has
20   provided a timetable or other indication of the speed with which it expects the agency to proceed
     in the enabling statute, that statutory scheme may supply content for this rule of reason; (3)
21   delays that might be reasonable in the sphere of economic regulation are less tolerable when
     human health and welfare are at stake; (4) the court should consider the effect of expediting
22   delayed action on agency activities of a higher or competing priority; (5) the court should also
     take into account the nature and extent of the interests prejudiced by delay; and (6) the court

1   most circumstances, the *TRAC* standard governs unreasonable delay claims under APA

2   Section 706(1).  *See Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001).  However,

3   the Ninth Circuit has rejected the *TRAC* standard where "Congress has specifically

4   provided a deadline for performance."  *Biodiversity Legal Found. v. Badgley*, 309 F.3d

5   1166, 1177 n.11 (9th Cir. 2002); *see also Ctr. for Food Safety v. Hamburg*, 954

6   F. Supp. 2d 965, 970-71 (N.D. Cal. 2013) (quoting *Badgley*, 309 F.3d at 1177 n.11)

7   ("[W]here Congress has specifically provided a deadline for performance by an agency,

8   'no balancing of factors is required or permitted.'").

9          Here, agency regulations rather than a congressional statute provided a deadline

10  for performance, but the court has already concluded that those regulatory deadlines are

11  mandatory.[10]  (2/10/16 Order at 21-26.)  The court discerns no reason to differentiate

12  those mandatory regulatory deadlines from the mandatory statutory deadlines in *Badgley*,

13  *Hamburg*, and similar cases from district courts in the Ninth Circuit.  *See, e.g.*, *Garcia*,

14  2014 WL 6657591, at *12 (observing that Ninth Circuit authority suggests that the court

15  "need not undertake TRAC's six-factor balancing inquiry" where a regulation imposes a

16  firm deadline).  Accordingly, the court rejects Defendants' argument that the

17  individualized *TRAC* inquiry undermines commonality.  Having concluded that 30-Day

18  //

---

19  need not find any impropriety lurking behind agency lassitude in order to hold that agency action
    is unreasonably delayed.  *TRAC*, 750 F.2d at 80; *see also Indep. Mining*, 105 F.3d at 507 n.7.

20
21      [10] Defendants contrast the court's prior ruling, which they characterize as concluding that
        "the regulations created a mandatory duty for Defendants to act," with their current argument—
        that the regulatory timeline is not mandatory.  (3d MCC Resp. at 11 n.2.)  The court rejects this
        characterization of the court's previous decision and Defendants' effort to relitigate whether the
22      30-day deadline is directory or mandatory.  (*See* 2/10/16 Order at 25-26 & n.18.)

1   Plaintiffs remedied the previously identified commonality flaws and rejected Defendants'

2   argument regarding the *TRAC* factors, the court concludes that Plaintiffs meet Rule 23's

3   commonality requirement.

4       4. <u>Typicality</u>

5       "[R]epresentative claims are 'typical' if they are reasonably co-extensive with

6   those of absent class members; they need not be substantially identical." *Hanlon*, 150

7   F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class

8   representative, and not to the specific facts from which it arose or the relief sought."

9   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Nonetheless, the

10  "commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457

11  U.S. at 157 n.13. "Both serve as guideposts for determining whether under the particular

12  circumstances maintenance of a class action is economical and whether the named

13  plaintiff's claim and the class claims are so interrelated that the interests of the class

14  members will be fairly and adequately protected in their absence." *Id.* In determining

15  typicality, courts consider "whether other members have the same or similar injury,

16  whether the action is based on conduct which is not unique to the named plaintiffs, and

17  whether other class members have been injured by the same course of conduct." *Hanon*,

18  976 F.2d at 508.

19      The court has already concluded that 30-Day Plaintiffs' previous proposed class

20  definition satisfies the typicality requirement, and the court's analysis of the previous

21  class definition applies with equal force to the current class definition. (*Compare* 10/5/16

22  Order at 48-50, *with* 3d MCC at 2.) Defendants' only new argument pertaining to

1   typicality is based on the *TRAC* standard.  (*See* 3d MCC Resp. at 13-14.)  The court

2   concluded that the *TRAC* standard does not apply to the 30-day deadline in 8 C.F.R.

3   § 208.7(a)(1), *see supra* § III.B.3., and the individual analysis required under that

4   standard therefore presents no obstacle to class certification.  Accordingly, the court

5   concludes that the proposed 30-Day Subclass satisfies Rule 23's typicality requirement.

6       5.  Adequacy

7       "The final hurdle interposed by Rule 23(a) is that 'the representative parties will

8   fairly and adequately protect the interests of the class.'"  *Hanlon*, 150 F.3d at 1020

9   (quoting Fed. R. Civ. P. 23(a)(4)); *see also* Fed. R. Civ. P. 23(g).  "Resolution of two

10  questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have

11  any conflicts of interest with other class members and (2) will the named plaintiffs and

12  their counsel prosecute the action vigorously on behalf of the class?"  *Id.* (citing *Lerwill*

13  *v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

14      As Defendants acknowledge (3d MCC Resp. at 15 n.4), the court has already

15  concluded that the putative class representatives and putative class counsel are adequate

16  (10/5/16 Order at 50-53).  The putative class representatives and putative class counsel

17  for the 30-Day Subclass have not changed since the court made that conclusion.  (*See*

18  *generally* Am. Compl.)  Nonetheless, "Defendants request that the Court reconsider their

19  arguments and also preserve the issue for appeal."  (3d MCC Resp. at 15 n.4.)

20  Defendants' deadline to move for reconsideration of the court's October 5, 2016, order

21  passed more than eight months ago.  *See* Local Rules W.D. Wash. LCR 7(h)(2).  They

22  raise no new arguments, and most of their arguments pertain specifically to the now-moot

1   90-Day Subclass.  (3d MCC Resp. at 15-16.)  The court therefore appoints 30-Day

2   Plaintiffs as class representatives.

3       However, the court's rulings significantly narrow this case, and 30-Day Plaintiffs

4   have not shown that the appointment of 10 lawyers as class counsel is warranted.  Federal

5   Rule of Civil Procedure 23(g) governs the appointment of class counsel, and the

6   Committee Note regarding that subsection provides, in part:

7       The rule states that the court should appoint "class counsel."  In many
        instances, the applicant will be an individual attorney.  In other cases,
8       however, an entire firm, or perhaps numerous attorneys who are not
        otherwise affiliated but are collaborating on the action will apply.  No rule of
9       thumb exists to determine when such arrangements are appropriate; the court
        should be alert to the need for adequate staffing of the case, but also to the
10      risk of overstaffing or an ungainly counsel structure.

11  Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment.  Rule 23(g) also

12  permits the court to "include in the appointing order provisions about the award of

13  attorney's fees or nontaxable costs under Rule 23(h)."  Fed. R. Civ. P. 23(g)(1)(D).  The

14  court's experience with this case and similar past actions suggests that 10 lawyers would

15  constitute overstaffing and an ungainly counsel structure.  *See* Fed. R. Civ. P. 23(g)

16  advisory committee's note to 2003 amendment.  Accordingly, the court directs the parties

17  to review Rule 23(g), meet and confer regarding the appointment of class counsel, and

18  file a motion—or motions, *see* Fed. R. Civ. P. 23(g)(2)—to appoint class counsel that

19  contemplate the narrowing of the case and the considerations articulated above.  If the

20  parties agree regarding class counsel, they may file a stipulated motion; if the parties

21  cannot agree, the motion or motions must be noted for the second Friday and briefed

22  //

1   accordingly.  *See* Local Rules W.D. Wash. LCR 7(d)(2).  Any motion to appoint class

2   counsel must be filed no later than July 27, 2017.

3        6.   Common Grounds

4        Class certification under Rule 23(b)(2) is only appropriate where the plaintiffs

5   allege that the defendant has "acted or refused to act on grounds that apply generally to

6   the class, so that final injunctive relief or corresponding declaratory relief is appropriate

7   respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The court has already

8   concluded that 30-Day Plaintiffs' claims satisfy this standard (10/5/16 Order at 53-54),

9   and Defendants do not challenge that conclusion here (*see generally* 3d MCC Resp.).

10   Accordingly, the court concludes that the 30-Day Subclass satisfies Rule 23(b)(2).

11        7.   Failsafe Class

12        Separately, Defendants argue that the proposed class is failsafe.  (3d MCC Resp. at

13   16-17.)  "[A] failsafe class definition requires the court to reach a legal conclusion on the

14   validity of a person's claim in order to determine whether the person is in the class,

15   meaning the class is unascertainable prior to a liability determination."  *Waterbury v. A1*

16   *Solar Power Inc.*, No. 15cv2374-MMA (WVG), 2016 WL 3166910, at *4 (S.D. Cal. June

17   7, 2016) (internal quotations omitted); *see also In re AutoZone, Inc. Wage & Hour Emp't*

18   *Practices Litig.*, 289 F.R.D. 526, 545-46 (N.D. Cal. 2012); *Kamar v. RadioShack Corp.*,

19   375 F. App'x 734, 736 (9th Cir. 2010).  "Importantly, however, it is not clear that the

20   Ninth Circuit forbids fail-safe classes."  *In re AutoZone*, 289 F.R.D. at 546.

21        Even assuming failsafe classes are improper, the proposed class is not failsafe.  As

22   defined, the proposed class includes any noncitizen (1) who has filed or will file an initial

1    application for employment authorization under 8 C.F.R. § 208.7; (2) whose application

2    was not or will not be adjudicated within 30 days, as calculated pursuant to the applicable

3    regulations, 8 C.F.R. §§ 103.2(b)(10)(i), 208.7(a)(2), (a)(4); and (3) who has not or will

4    not be granted interim employment authorization.  (*See* 3d MCC at 2.)  This class

5    definition is based on factual characteristics of the putative class members, and it is not

6    contingent on whether Section 208.7(a)(1)'s 30-day deadline is mandatory or directory.

7    In other words, if Defendants prevailed on their argument that the 30-day deadline is

8    directory, Defendants could obtain a binding judgment against the 30-Day Subclass.  The

9    class becomes failsafe, as Defendants define that term, only because earlier proceedings

10   pertaining to subject-matter jurisdiction required the court to determine whether the

11   30-day deadline imposed by 8 C.F.R. § 208.7(a)(1) is mandatory.  (*See* 2/10/16 Order at

12   21-26.)  This procedural happenstance does not render the class failsafe, as properly

13   defined, because the class definition does not require such a conclusion in order to

14   determine membership.[11]  *See Waterbury*, 2016 WL 3166910, at *4.  Accordingly, the

15   court rejects Defendants' argument.

16        8.  Certification

17        The court finds that all of the prerequisites of Rules 23(a) and 23(b)(2) are met.

18   Accordingly, the court grants 30-Day Plaintiffs' motion and certifies the following class:

19        Noncitizens who have filed or will file applications for employment
          authorization that were not or will not be adjudicated within . . . 30 days . . .
20        and who have not or will not be granted interim employment authorization.

21   _____

         [11] In addition, although the court has ruled that the 30-day regulatory deadline is
22   mandatory, the court has reserved judgment on the availability of interim EADs as a remedy.
     (*See* 2/10/16 Order at 26 n.19.)

1    [This class] consists of only those applicants for whom 30 days has accrued
2    or will accrue under the applicable regulations, 8 C.F.R. §§ 103.2(b)(10)(i),
     208.7(a)(2), (a)(4).

3    Further, the court appoints A.A., Mr. Machic Yac, and W.H. as class representatives.

4    Finally, the court directs the parties to review Rule 23(g), meet and confer, and brief the

5    appointment of class counsel in the manner described above.  *See* Fed. R. Civ. P. 23(g);

6    *supra* § III.B.5.

7                              **IV.    CONCLUSION**

8          Based on the foregoing analysis, the court GRANTS Defendants' motion to

9    dismiss the 90-Day Plaintiffs' and 90-Day Subclass's claims (Dkt. # 88), DISMISSES

10   those claims as moot, and GRANTS in part and DENIES in part 30-Day Plaintiffs'

11   motion for class certification (Dkt. # 82).  The court APPOINTS A.A., Mr. Machic Yac,

12   and W.H. as class representatives and DIRECTS the parties to review Rule 23(g), meet

13   and confer, and brief the appointment of class counsel in the manner described above.

14   Finally, the court DIRECTS the Clerk to update the docket to reflect substitution of

15   government officials sued in their official capacities.  *See supra* n.1.

16         Dated this 18th day of July, 2017.

17

18   _____

19   JAMES L. ROBART
     United States District Judge

20

21

22

ORDER - 27