UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.A., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES CITIZENSHIP<br>AND IMMIGRATION SERVICES,<br>et al.,<br><br>　　　　　Defendants. | CASE NO. C15-0813JLR<br><br>ORDER ON CROSS-MOTIONS<br>TO SUPPLEMENT THE<br>ADMINISTRATIVE RECORD |

## I.　INTRODUCTION

There are two motions before the court: (1) a motion to supplement the administrative record filed by Defendants United States Citizenship and Immigration Services ("USCIS"); United States Department of Homeland Security ("DHS"), which oversees USCIS; James McCament, Acting Director of USCIS, in his official capacity; and John Kelly, Secretary of DHS, in his official capacity (collectively, "Defendants"); and (2) a cross-motion to supplement the administrative record filed by Plaintiffs A.A.,

Antonio Machic Yac, and W.H. (collectively, "Plaintiffs").[1] (Defs. Mot. (Dkt. # 103); Pls. Mot. (Dkt. # 104).) Being fully advised,[2] the court GRANTS in part and DENIES in part Defendants' motion to supplement the administrative record and GRANTS in part and DENIES in part Plaintiffs' cross-motion to supplement the administrative record.

## II.  BACKGROUND

Through this injunctive class action, Plaintiffs seek to compel USCIS to abide by regulatory deadlines for adjudicating applications for employment authorization documents ("EADs") filed by asylum applicants. (*See generally* Am. Compl. (Dkt. # 58).) Plaintiffs claim that Defendants have failed to adjudicate EADs within the regulatory timeframe, which constitutes "unlawfully withheld or unreasonably delayed" agency action. *See* 5 U.S.C. § 706(1).

**A. Regulatory Structure**

For an alien to be eligible to work in the United States, the alien must file Form I-765 with DHS in order to obtain an EAD.[3] (Am. Compl. ¶¶ 3-4.) USCIS is responsible for adjudicating I-765 forms. (*Id.* ¶ 4.) A separate regulation governs asylum seekers applying for an EAD for the first time. *See* 8 C.F.R. §§ 208.7(a)(1), 274a.12(c)(8),

---

[1] The court DIRECTS the Clerk to substitute L. Francis Cissna for former Acting Director of USCIS James McCament and Kirstjen Nielsen for former Secretary of DHS John Kelly. *See* Fed. R. Civ. P. 25(d).

[2] No party requests oral argument. (Defs. Mot. at 1; Pls. Mot. at 1.) The court thus declines to hold oral argument because oral argument would not be helpful to the court's disposition of the motion. Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided . . . without oral argument.").

[3] Plaintiffs incorporate the I-765 Instructions into their amended complaint by reference. (*See* Am. Compl. ¶ 8.)

274.13(d); *see also Carballo v. Meissner*, No. C00-2145, 2000 WL 174198, at *2 (N.D. Cal. Nov. 17, 2000) (describing the process for an asylum applicant seeking an EAD). Section 274a.13(a)(2) mandates that USCIS adjudicate initial asylum EAD applications "in accordance with [Section] 208.7." 8 C.F.R. § 274a.13(a)(2). Section 208.7 provides that after filing an application for asylum, an individual must typically wait 150 days before filing an initial EAD application. *Id.* § 208.7(a)(1). But there are exceptions to this rule. *Id.* For instance, if asylum is granted within 150 days, the asylee may apply for an EAD immediately thereafter. *Id.* Additionally, if asylum is denied at any point, the applicant becomes ineligible for an EAD. *Id.*

Assuming an application remains pending for at least 150 days without delay caused by the applicant, the applicant may apply for an EAD. *Id.* §§ 208.7(a)(1)-(2), (4). USCIS "shall have 30 days from the date of filing of the request [sic] employment authorization to grant or deny that application," except that USCIS may not in any event grant the EAD prior to 180 days after the noncitizen files her asylum application. *Id.* § 208.7(a)(1).

**B. Procedural History**

Plaintiffs filed this putative class action on May 22, 2015, because Defendants failed to adjudicate I-765 forms within the regulatory deadline. (Compl. (Dkt. # 1).) On November 4, 2016, Plaintiffs filed a third motion for class certification (3d MCC (Dkt. # 82)), and Defendants subsequently filed a third motion to dismiss (3d MTD (Dkt. # 88)). The court denied and dismissed Plaintiffs' proposed "90-Day" subclass, but

//

certified Plaintiffs' "30-Day" subclass. (7/18/17 Order (Dkt. # 95)). The "30-Day" class is defined as:

> Noncitizens who have filed or will file applications for employment authorization that were not or will not be adjudicated within . . . 30 days . . . and who have not or will not be granted interim employment authorization. [This class] consists of only those applicants for whom 30 days has accrued or will accrue under the applicable regulations, 8 C.F.R. §§ 103.2(b)(10)(i), 208.7(a)(2), (a)(4).

(*Id.* at 26-27.) The court appointed A.A., Mr. Machic Yac, and W.H. as class representatives. (*Id.* at 27.) The current administrative record consists of documents related to individual EAD applications within the "30-Day" subclass. (*See* AR-I (Dkt. # 67); AR-II (Dkt. # 67-6); AR-III (Dkt. # 38) at 41-51.) The parties filed their motions to supplement the administrative record following class certification. (Defs. Mot; Pls. Mot.)

Defendants seek to add six documents to the administrative record. (Defs. Mot., Ex. A ("Ex. A") (Dkt. # 103-1); *id.*, Ex. B ("Ex. B") (Dkt. # 103-2); *id.*, Ex. C ("Ex. C") (Dkt. # 103-3); *id.*, Ex. D ("Ex. D") (Dkt. # 103-4); *id.*, Ex. E ("Ex. E") (Dkt. # 103-5); *id.*, Ex. F ("Neufeld Decl.") (Dkt. # 103-4)). These documents describe the I-765 adjudication and asylum application procedures. (Ex. A; Ex. B; Ex. C; Ex. D; Ex. E; Neufeld Decl.) Three of the documents are data sheets showing "various factors and considerations" as to why USCIS is unable to comply with the 30-day regulatory deadline. (*See* Defs. Mot. at 3; Ex. B; Ex. C; Ex. D.) Defendants argue the documents provide key background information and historical context relevant to USCIS's inaction on EAD applications. (Defs. Mot. at 3.)

Plaintiffs seek to supplement the administrative record with a March 31, 2017 Memorandum entitled, "Jurisdiction and EAD Clock Procedures for Unaccompanied Alien Children (UACs)." (Pls. Mot. at 10.) Plaintiffs also request to supplement the administrative record with materials already submitted to the court, such as declarations and exhibits. (*Id.* at 11.) These documents detail the harm to class members resulting from delayed adjudications by Defendants. (*Id.*)

In addition, Plaintiffs argue that Exhibits B, C, and E are not relevant to the underlying cause of action and therefore oppose adding them to the record. (Pls. Mot. at 2-3.) Plaintiffs also object to including Exhibit F, the declaration of Donald W. Neufeld, the Associate Director for Service Center Operations at USCIS, because they contend the declaration provides unwarranted post-hoc rationalizations for USCIS's inaction. (*Id.* at 3-4.) However, if the court supplements the record with the declaration, Plaintiffs request an opportunity to depose Mr. Neufeld and request that Defendants produce the data underlying his assertions. (*Id.* at 6-11.)

### III. ANALYSIS

#### A. Legal Standard

Section 706 of the Administrative Procedure Act ("APA") defines the scope of review of agency action. 5 U.S.C. § 706. It states that a court "shall review the whole record or those parts of it cited by a party." *Id.* The general rule therefore is that reviewing courts are limited to considering only the materials in the administrative record. *Fla. Power & Light Co., v. Lorion*, 470 U.S. 729, 743-44 (1985). Under this general rule, "[j]udicial review of an agency decision typically focuses on the

administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." *Sw. Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

The Ninth Circuit recognizes certain exceptions to the general rule. The scope of those exceptions depends on whether the claims are challenging final agency action or agency inaction under 5 U.S.C. § 706(1), also known as "failure-to-act" claims. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("A § 706(1) claim can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take.")

For claims challenging final agency action, exceptions for supplementing the administrative record are "widely accepted" but "narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). The court may admit extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Id.* at 1030 (citing *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450). The four limited exceptions "operate to identify and plug holes in the administrative record." *Id.* at 1030.

//

However, under § 706(1), "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of The Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *see also Indep. Mining. Co., Inc. v. Babbitt*, 105 F.3d 502, 511-12 (9th Cir. 1997) (noting that when a suit seeks to compel agency action, the court can consider supplementary information regarding the agency's position because no single date defines the administrative record). In "failure-to-act" cases, "there is often no official statement of the agency's justification for its actions or inactions." *S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).

Because the limit of the record is less clear in "failure-to-act" cases, courts may supplement beyond the "widely accepted" four exceptions in final agency action cases. *See, e.g.*, *Babbitt*, 105 F.3d at 505; *Firebaugh Canal Water Dist. v. United States*, No. 1:88-CV-00634 OWW DL, 2010 WL 3702664, at *1 (E.D. Cal. Sept. 17, 2010); *Seattle Audubon Soc'y v. Norton*, No. C05-1835RSL, 2006 WL 1518895, at *3 (W.D. Wash. May 25, 2006) (stating that a reviewing court is not only limited to the four exceptions "because there is a greater chance that some extraneous piece of information might be necessary to shed light on the agency's inaction."). Supplementation is therefore determined on a case-by-case basis. *Seattle Audubon Soc'y*, 2006 WL 1518895, at *3. However, supplementation is appropriate only when the materials are relevant to determining whether relief should be granted. *See Friends of The Clearwater*, 222 F.3d at 560 ("If extra-record evidence shows that an agency has rectified a [National Environmental Policy Act ("NEPA")] violation after the onset of legal proceedings, that

evidence is relevant to the question of whether relief should be granted."); *Babbitt*, 105 F.3d at 511 (holding that the district court did not err in reviewing an extra-record document because "[i]t was merely supplemental evidence submitted in support of appellee's position on IMC's motion for reconsideration").

Although supplementation is generally more permissible in "failure-to-act" cases, "the focal point for judicial review" should nevertheless be the "administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142. Thus, there is no "unlimited discovery" in "failure-to-act" cases, *Seattle Audubon Soc'y*, 2006 WL 1518895, at *3, and the scope of supplementation remains "constrained," *Lands Council*, 395 F.3d at 1030. "Were the federal courts routinely or liberally to admit new evidence . . . it would be obvious that the federal courts would be proceeding, in effect, de novo." *Id.*

In *Friends of The Clearwater v. Dombeck*, for example, the Ninth Circuit allowed the United States Forest Service to supplement the record with several studies prepared after the agency refused the plaintiff's request to prepare a supplemental environmental impact statement under the National Environmental Policy Act ("NEPA"). 22 F.3d at 560-61. The court allowed such studies because if the studies showed that the agency "rectified a NEPA violation after the onset of legal proceedings," that evidence directly related to the question of whether relief should be granted. *Id.* In *San Francisco Baykeeper v. Whitman*, the Ninth Circuit permitted the agency to supplement the administrative record with a "Program Review Document," describing efforts by the state of California to comply with various statutory guidelines under the Clean Water Act. 297

F.3d at 886.  The court concluded that the document directly related to the relief the plaintiff requested and thus provided the court with helpful background information.  *Id.*  And in *Wildearth Guardians v. U.S. Federal Emergency Management Agency*, the district court granted plaintiff's motion to supplement the administrative record with several documents highlighting background information relevant to the underlying claim.  No. CV-10-863-PHX-MHM, 2011 WL 935656, at *4 (D. Ariz. Mar. 15, 2011).

B.  **Application to the Parties' Requests**

Applying the legal standard to the motions before the court, the court grants Defendants' motion as to Exhibits A-E and denies Defendants' motion as to Exhibit F.  The court grants Plaintiffs' motion in regards to the March 31, 2017 Memorandum and denies Plaintiffs' remaining requests.

1. Exhibits A-E

Exhibits A-E contain relevant historical context and background information related to Plaintiffs' § 706(1) claim.  Exhibit A is a presentation explaining the I-765 Form, the Application for Employment Authorization, and the (c)(8) Asylum and Withholding of Removal process.  (Ex. A.)  Exhibits B, C, and D are spreadsheets categorizing data regarding the initial EAD applications of the certified class.  (Ex. B; Ex. C; Ex. D.)  Exhibit B shows the number of initial EAD applications received by USCIS from asylum applicants on a monthly basis from Fiscal Year 2013 to Fiscal Year 2017.  (Ex. B.)  Exhibit C indicates the number of pending initial EAD applications that also have Requests for Evidence ("RFE") and/or were routed to the Background Check Unit ("BCU")/Center Fraud Detections Operations ("CFDO").  (Ex. C.)   Exhibit C further

categorizes this data into 30-day increments to highlight how many pending EAD applications exist after the 30-day regulatory deadline. (*Id.*) Exhibit D shows "the processing times of initial EAD applications based on a pending asylum application, aggregated quarterly, from Fiscal Year 2010 to Fiscal Year 2017." (Ex. D.) Lastly, Exhibit E is a printout of a USCIS webpage describing the current waiting period for asylum application interviews. (Ex. E.)

Exhibits A and D provide background information relevant to the certified class and the requested relief. (Ex. A; Ex. D.) In addition, Plaintiffs do not object to adding Exhibits A and D to the administrative record. (Pls. Mot. at 2); *see Firebaugh Canal Water Dist.*, 2010 WL 3702664, at *5 (allowing supplementation of the administrative record when the parties both agreed that the documents provided relevant historical information).

Plaintiffs rely only on the four exceptions to final agency action, rather than the broader "failure-to-act" exception, to argue that Exhibits B, C, and E fall outside the scope of proper supplementation. (*See* Pls. Mot. at 3). However, in agency inaction cases—"failure-to-act" claims—supplementation is not so limited. *See Friends of The Clearwater*, 222 F.3d at 560; *Babbitt*, 105 F.3d at 511-12; *S.F. Baykeeper*, 297 F.3d at 886. Plaintiffs also object to including Exhibits B, C, and E in the administrative record because the court previously held that the 30-day regulatory deadline is mandatory (2/20/16 Order at 21-26), and according to Plaintiffs, any explanation regarding why USCIS has failed to comply is irrelevant (Pls. Mot. at 2-3). However, at this time, the question presently before the court is not the underlying merits of the Plaintiffs' claims,

but whether it is appropriate to supplement the administrative record.[4] Courts in the Ninth Circuit permit supplementation when "there is no final agency action to demarcate the limits of the record." *Friends of The Clearwater*, 222 F.3d at 560.

Thus, the court allows supplementation of the administrative record with Exhibits A-E because they provide relevant background information given the certified class definition (7/18/2017 Order at 26-27) and the relief Plaintiffs request. The court therefore also grants Plaintiffs' request to supplement with the March 31, 2017 Memorandum entitled, "Jurisdiction and EAD Clock Procedures for Unaccompanied Alien Children (UACs)." (Pls. Mot. at 10.) Defendants' Exhibit A mentions the Memorandum, which is directly relevant to the procedures Defendants describe. (Ex. A at 29.)

However, the court denies Plaintiffs' request to supplement the administrative record with materials already submitted to the court. (Pls. Mot. at 11.) In agency inaction cases, supplementation must directly relate to the requested relief. *See Friends of The Clearwater*, 222 F.3d at 560. However, these materials detail the harm to class members from delayed adjudications and do not provide an answer regarding why the delay has occurred. (*See* Pls. Mot. at 11.) "The reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is

---

[4] Plaintiffs attempt to distinguish this case from other "failure-to-act" cases by arguing that because the 30-day regulatory deadline is mandatory, the factors used to assess the reasonableness of USCIS's delay will not apply. *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984). Under this argument, any supplementation that explains delay falls outside the scope of exceptions. However, Plaintiffs do not point to any authority regarding mandatory deadlines and supplementing the administrative record.

often no official statement of the agency's justification for its actions or inaction." *S.F. Baykeeper*, 297 F.3d at 866. Supplementing with these documents would impermissibly expand the record, even in this "failure-to-act" case. *See id.*

   2. Exhibit F

Lastly, Defendants seek to include the declaration of Mr. Neufeld. (Defs. Mot. at 5; *see also* Neufeld Decl. ¶ 1.) Mr. Neufeld describes the adjudication process of EAD applications and the dramatic increase in both asylum and EAD applications. (*Id.* ¶¶ 31-35.) Plaintiffs object because they argue Mr. Neufeld's declaration amounts to an "impermissible post-hoc rationalization." (Pls. Mot. at 3.)

Regardless of whether Mr. Neufeld's declaration represents an impermissible post-hoc rationalization, the court declines to supplement the administrative record with Mr. Neufeld's declaration for several reasons. First, multiple sections of Mr. Neufeld's declaration are irrelevant to the issues in this case. For example, the certified class definition does not contain a distinction between the processing times for affirmative and defensive applications for asylum, which Mr. Neufeld expounds upon at length.[5] (Neufeld Decl. ¶¶ 27-29, 51.) Second, even though the declaration includes sections relevant to the background and historical context of EAD adjudications, those sections

---

[5] Mr. Neufeld also asserts that "perfect compliance" with the 30-day regulatory mandate "may pose public safety or other risks." (*See, e.g.*, Neufeld Decl. ¶ 58.) Defendants have not provided any data to support such an assertion, nor is it relevant to the class certification definition or Plaintiffs' request for relief. Similarly, Mr. Neufeld referenced difficulty in processing initial EAD applications "filed at exactly or around the day the underlying asylum application has been pending for 150 days." (*Id.* ¶¶ 30, 52.) In response to Plaintiffs' discovery request, Defendants admits that this data "is not kept in the ordinary course of business." (Defs. Reply (Dkt. # 106) at 5.)

duplicate Exhibits A-E. Although the court may permit parties to supplement the administrative record, the "failure-to-act" exception is not an invitation for "unlimited discovery," which would be required if the court allowed Mr. Neufeld's opinions to become part of the record. *Seattle Audubon Soc'y*, 2006 WL 1518895, at *3.

Finally, Plaintiffs request discovery on a number of points Mr. Neufeld raised, if the court permits the declaration to become part of the record. (Pls. Mot. at 8-10.) Because Plaintiffs' requests hinge upon the admissibility of Mr. Neufeld's declaration, the court denies as moot the rest of Plaintiffs' requests that pertain to the declaration.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Defendants' motion to supplement the administrative record (Dkt. # 103) and GRANTS in part and DENIES in part Plaintiffs' cross-motion to supplement the administrative record (Dkt. # 104). The court GRANTS Defendants' motion in regards to Exhibits A-E and DENIES Defendants' motion in regards to Exhibit F. The court GRANTS Plaintiffs' cross-motion in regards to the March 31, 2017 Memorandum, "Jurisdiction and EAD Clock Procedures," and DENIES Plaintiffs' remaining requests. Lastly, the court DIRECTS the clerk to substitute L. Francis Cissna for former Acting Director of USCIS

//

//

//

//

//

James McCament and Kirstjen Nielsen for former Secretary of DHS John Kelly.  *See supra* note 1.

Dated this 17th day of April, 2018.

JAMES L. ROBART
United States District Judge