UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILMAN GONZALEZ ROSARIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al., <br><br> Defendants. | CASE NO. C15-0813JLR <br><br> ORDER |

## I. INTRODUCTION

Before the court are two letter briefs filed by the parties. (Plf. Ltr. (Dkt. # 138); Def. Ltr. (Dkt. # 139).) The parties filed these letters pursuant to a stipulated order directing them to do so. (*See* Stip. Order (Dkt. # 137).) The parties ask the court to resolve two disputes concerning the parties' agreed plan to implement the court's injunction in this matter. (*See generally* Plf. Ltr.; Def. Ltr.; *see also* Agreed Imp. Plan (Dkt. # 134-1); SJ Order/Injunction (Dkt. # 127).) In addition to their initial filings, the

court ordered the parties to simultaneously file responsive letters (11/15/18 Order (Dkt. # 140)), and those letters are also before the court (Plf. Resp. Ltr. (Dkt. # 141); Def. Resp. Ltr. (Dkt. # 142)). Based on the parties' initial and responsive letters, the court resolves the parties' disputes as described below.

## II. BACKGROUND

On July 18, 2017, the court granted in part and denied in part Plaintiffs' motion for class certification. (CC Order (Dkt # 95) at 27.) The court certified a class of noncitizens who have filed or will file applications for employment authorization that were not or will not be adjudicated within 30 days and who have not or will not be granted interim employment authorization. (*Id.* at 26.) The court further stated that the class consists of only those applicants for whom 30 days has accrued or will accrue under the applicable regulation, 8 C.F.R. §§ 103.2(b)(10)(i), 208.7(a)(2), (a)(4). (*Id.* at 27.)

On July 26, 2018, the court granted Plaintiffs' motion for summary judgment and found Defendants in violation of 8 C.F.R. § 208.7(a)(1). (SJ Order at 12.) The court also enjoined Defendants "from further failing to adhere to the 30-day deadline for adjudicating [employment authorization document ("EAD")] applications [for asylum seekers], as set forth in 8 C.F.R. § 208.7(a)(1)." (*Id.*) Finally, the court ordered Defendants "to submit status reports every six (6) months regarding the rate of compliance with the 30-day timeline." (*Id.*) At the time of the order, Defendants' own data revealed that from 2010 to 2017, Defendant U.S. Citizenship and Immigration Services ("USCIS") met the 30-day deadline in in only 22% of cases. (*See id.* at 3.)

//

On September 14, 2018, the parties submitted a joint plan for implementation of the court's order and injunction. (Joint Statement (Dkt. # 134); *see also* Agreed Imp. Plan.) Nevertheless, the parties stated they had not been able to come to agreement on two points: "(1) whether the [c]ourt should specify specific rates of compliance for employment authorization document (EAD) adjudication as part of an implementation order and what those rates should be; [and] (2) the appropriate venue for filing any Federal District Court action where an EAD application is not adjudicated in compliance with this [c]ourt's order, after the individual has complied with the steps set forth in the implementation plan." (Joint Statement at 1.) The parties asked the court if they could "simultaneously file short letter-briefs of no more than three pages addressing these two issues" and have the court "resolve this lingering dispute." (*Id.*) On October 3, 2018, the court entered an order consistent with the parties' stipulated motion. (10/3/18 Order (Dkt. # 137); *see also* Plf. Ltr.; Def. Ltr.) At the direction of the court, the parties also simultaneously filed responsive letters. (11/15/18 Order; Plf. Resp. Ltr.; Def. Resp. Ltr.)

On September 21, 2018, Defendants filed a notice of appeal concerning the court's summary judgment order and injunction. (Not. of App. (Dkt # 135).)

On January 25, 2019, Defendants submitted their first status report pursuant to the court's order. (Status Report (Dkt. # 144); *see also* SJ Order at 12.) Defendants' status report indicates that Defendants achieved a 96.3% compliance rate with 8 C.F.R. § 208.7(a)(1) in December 2018, and an average compliance rate of 92.7% for the final quarter of 2018. (Status Report at 2; *see also* Status Report Ex. A (Dkt. # 144-1) at 3.)

The court now considers the issues presented in the parties' letters.

# III. ANALYSIS

## A. Jurisdiction

Because Defendants filed a notice of appeal (Not. of App. (Dkt. # 135)), the court initially considers its jurisdiction. The filing of a notice appeal generally divests the district court of jurisdiction over the matters appealed. *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982), *amended sub nom. McClatchy Newspaper v. Local 46* (9th Cir. Sept. 22, 1982). Nevertheless, the district court retains jurisdiction to enforce an injunction under certain exceptions to this rule. First, Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from . . . [a] final judgment that grants . . . an injunction, the court may suspend, modify, restore or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Second, until its judgment is superseded on appellate review, the district court retains jurisdiction to enforce the injunction and to preserve the status quo. *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Robinson v. Delgado*, No. 1:02-CV-01538-NJV, 2012 WL 4753493, at *1 (N.D. Cal. Oct. 4, 2012). Thus, the court concludes that it retains jurisdiction to consider the issues that the parties have stipulated to place before this court.

## B. Rates of Compliance

Plaintiffs argue that the court should require Defendants to be in full compliance with 8 C.F.R. § 208.7(a)(1) by a date certain instead of simply requiring 6-month status reports. (Plf. Ltr. at 1.) Defendants assert that an order specifying Defendants' rate of

compliance would be an improper modification of the court's injunction and would improperly curtail the scope of the court's adjudication of Defendants' "substantial compliance" with the injunction if Plaintiffs were to pursue an enforcement action. (Def. Ltr. at 2.)

The court agrees that adding such a provision to the injunction when the court has already specified that Defendants are to submit status reports at regular intervals would be an improper modification to the court's injunction. A party seeking to modify an injunction bears the burden of establishing that a significant change in circumstances warrants a revision of the injunction. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992). Here, even if the court had jurisdiction to order such a change, *see supra* § III.A., Plaintiffs have failed to meet their burden. Defendants' January 25, 2019, status report demonstrates clear improvement in Defendants' compliance rates. (*See* Status Report.) Given that the adjudication rate reflects significant improvement since the court entered its injunction, modification of the court's injunction to include specific rates of compliance is not justified by any change in the law or facts.

Further, if Plaintiffs at some point allege that Defendants have failed to comply with the court's injunction, their remedy is a motion for civil contempt. Civil contempt is defined as "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). As Defendants point out, substantial compliance is a defense to civil contempt. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). "If a violating party has taken all reasonable steps to comply

with the court order, technical or inadvertant [sic] violations of the order will not support a finding of civil contempt." *Id.* (internal quotations omitted); *see also Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) ("A contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took *all* reasonable steps to comply with the order.") (italics in original). Thus, the court concludes that adoption of specific rates of compliance would not be appropriate because such rates would invite the possibility of arbitrary enforcement actions that would fail to take into account the reasonable steps that Defendants take to comply with the court's order.

Based on the foregoing analysis, the court declines to require Defendants to be in full compliance with 8 C.F.R. § 208.7(a)(1) by a date certain.

**C. Venue for Future Individual Actions**

The parties agree that only this court has jurisdiction to enforce compliance with issues that affect all or a substantial part of the class. (Plf. Resp. Ltr. at 3; Def. Ltr. at 3 ("[T]o the extent that Plaintiffs seek enforcement of this [c]ourt's injunction . . . on a[] . . . class-wide basis—the only proper venue is in this [c]ourt."). The parties disagree on whether this court is the only court to have jurisdiction over an action filed by an individual class member seeking to compel adjudication of his or her individual EAD application. Plaintiffs argue that any district court that would otherwise have venue should be able to adjudicate individual plaintiffs' claims to compel timely adjudication of their individual EAD applications. (Plf. Ltr. at 2-3; Plf. Resp. Ltr. at 3.) Defendants insist that all such individual claims must be filed in this court. (Def Ltr. at 3; Def. Resp. Ltr. at 1-2.)

Defendants' position is both practically problematic and legally incorrect. As Plaintiffs point out, there were over 200,000 initial asylum EAD applications filed in Fiscal Years 2017 and 2018. (*See* Plf Ltr. at 2, Ex. A.) The class is numerous and inherently transitory. As such, there will be class members in various locations throughout the country who may wish to file mandamus or Administrative Procedure Act district court actions if their EAD applications are not decided within 30 days. Requiring all of these actions to be filed in this court would represent an unreasonable and unwarranted burden on both this court and the individual plaintiffs who may be involved. Further, any such district court action would require examination of more than what this court already decided—that USCIS is obligated to comply with the 30-day deadline in 8 C.F.R. § 208.7(a)(1). (*See generally* SJ Order.) For example, based on the specific facts alleged, such individual actions may require the court to engage in additional factual inquiry to determine whether the 30-day clock has run, whether the EAD application was complete, and whether the individual met the requirements of the implementation plan, was responsible for any delay, or had been convicted of an aggravated felony.

This court's binding resolution of the common question whether USCIS is obligated to adjudicate initial asylum EADs within 30 days is distinct from the factual questions that may arise in individual actions. The general principle of class litigation is that court may resolve common questions—in this case the 30-day deadline—but individual, future claims for individualized relief can still be brought separately. *See, e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 881 (1984) (observing that Rule 23 class action procedures are designed to provide a mechanism for the expeditious

decision of common questions, but would not bar later exclusively individual claims); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 273883, at *3 (N.D. Cal. Jan. 30, 2012) ("[A] Rule 23(b)(2) judgment, with its one-size-fits-all approach and its limited procedural protections, will not preclude later claims for individualized relief."); *Cameron v. Tomes*, 990 F.2d 14, 17 (1st Cir. 1993) ("[I]n *Cooper*, . . . the Supreme Court confirmed what common sense would suggest: a class action judgment . . . binds the class members as to matters actually litigated but does not resolve any claim based on individual circumstances that was not addressed in the class action.").

Thus, the court concludes that any class-wide relief requested by either Plaintiffs or Defendants, including any contempt motions, are properly directed to this court. However, the class certification order in this case does not preclude individual class members from filing separate actions in other appropriate forums because the delay in a particular case involves individual circumstances and would require the court to go beyond the legal issues already decided by this court.

### IV. CONCLUSION

Based on the foregoing analysis, the court (1) declines to require full compliance with its injunction by a date certain, and (2) declines to require individuals who seek to

//

//

//

//

compel Defendants to adjudicate a specific EAD application to file their action in this court.

Dated this 20th day of March, 2019.

JAMES L. ROBART
United States District Judge